**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEBRA A. RICHARDSON,                )  | |
| )  | CASE NO.   1:07-cv-2169 |
| Plaintiff,            )  | |
| )  | |
| v.                               )  | MAGISTRATE JUDGE VECCHIARELLI |
| )  | |
| MICHAEL J. ASTRUE,            )  | |
| Commissioner of Social Security    )  | **MEMORANDUM OPINION & ORDER** |
| )  | |
| Defendant.         )  | |

Plaintiff, Debra A. Richardson ("Richardson"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Richardson's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this court AFFIRMS the decision of the Commissioner.

I.  Procedural History

Richardson filed an application for SSI on December 19, 2003, alleging disability beginning December 3, 2003 due to general pain, weakness, dizziness, blurry vision, and confusion.  Her application was denied initially and upon reconsideration.  Richardson timely requested an administrative hearing.

Administrative Law Judge James S. Carletti ("ALJ") held a hearing on December 4, 2006.  Richardson was represented by counsel at the hearing, and she testified on her own behalf.  Sheldon Steiner, M.D., testified as a medical expert ("ME"), and Gloria Lassoff testified as a vocational expert ("VE").  The ALJ issued a decision on December 29, 2006, in which he determined that Richardson is not disabled.  When the Appeals Counsel declined further review on June 7, 2007, the ALJ's decision became the final decision of the Commissioner.

Richardson filed an appeal to this court on July 17, 2007.  Richardson alleges that the ALJ's decision denying her benefits is not supported by substantial evidence because Richardson's mental impairment was not fully and fairly evaluated.  The Commissioner replies that the ALJ's decision is supported by substantial evidence.

II.  Evidence

*A.   Personal and Vocational Evidence*

Richardson was born on September 6, 1955 and was 51 years old at the time of the administrative hearing.  She has an 11th grade education and last worked about six or seven years ago as a housekeeper.

*B.   Medical Evidence*

On January 16, 2004, Richardson reported to Northeast Ohio Neighborhood Health

2

Services ("Northeast") for an examination. Transcript ("Tr."), Doc. No. 12, pp. 181-86. Richardson complained of general aches and pains and blurred vision. Statistical analysis of Richardson's test results indicated depression.

Franklin Krause, M.D., examined Richardson at the request of the Bureau of Disability Determination ("Bureau") on March 4, 2004. Tr. at 135-44. He described Richardson as suffering from glaucoma and abnormal liver function, smoking four or five cigarettes a day, having breathing problems, and experiencing shortness of breath and light-headedness upon exertion. Richardson was unable to walk a block or up a flight of stairs. She had a productive cough, occasionally wheezed, and had suffered pneumonia the preceding year. Richardson admitted drinking 72 oz. of beer a day and stated that she had used crack cocaine in the past. Richardson complained of throbbing and tingling in her left calf and thigh, headaches, double vision, blurred vision, pain in the eyes, tinnitus, sinus drainage, nausea, vomiting, diarrhea, constipation, and bright red blood in the stool. Dr. Krause diagnosed Richardson as suffering from dyspnea, alcohol abuse with hepatomegaly and minimally abnormal liver function, and calf pain without obvious abnormality. He also noted that Richardson was homeless but carried on most activities of daily living.

David V. House, Ph.D., conducted a Mental Status Evaluation of Richardson at the request of the Bureau on March 19, 2004. Tr. at 145-51. Dr. House found Richardson's concentration and attention to be moderately limited, with a slow pace, inconsistent persistence, and difficulty in completing mental tasks. Dr. House assigned Richardson a Global Assessment of Functioning ("GAF") of 48[1] and summarized his impressions and

---

[1] A GAF of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational,

conclusions as follows:

> Based upon the information gathered during testing and interview session, it is my opinion, with reasonable scientific certainty, that Debra Richardson would suffer from diagnosis of Depressive Disorder, Not Otherwise Specified, Panic Disorder with Agoraphobia, Obsessive Compulsive Disorder and Posttraumatic Stress Disorder along with a diagnosis of Alcohol Abuse and Cocaine Abuse in Remission, per her report.  Depression appears chronic.  Posttraumatic stress issues appear less chronic and related to a rape that occurred fairly recently, likely in 2000.
>
> 1. Concentration and attention are moderately limited due to features of depression and anxiety.
>
> 2. Her ability to understand and follow directions is not in [sic] that Ms. Richardson does not present as retarded.  However, her concentration would be mildly to moderately limited due to interruptions in her concentration and likely she would only be able to follow two to three step directions.
>
> 3. Her ability to withstand stress and pressure is at least moderately limited, relating to features of depression and anxiety.
>
> 4. Her ability to relate to others and deal with the general public appears at least moderately limited due to features of depression and anxiety.
>
> 5. Level of adaptability is at least moderately limited.  She receives little in the way of treatment.
>
> 6. Ms. Richardson's insight into her current situation and overall level of judgment appear to be at least moderately limited.
>
> Ms. Richardson participates minimally, if at all, in routine daily household responsibilities.  She would appear to require no immediate supervision in the management of her daily activities, but would appear to require supervision in the handling of her financial affairs. Her overall level of functioning is at a reduced level of efficiency.
>
> Should Debra Richardson be granted benefits, she would not appear to be capable of managing them in her own best interest.

Tr. at 149-50.

---

or school functioning (*e.g.,* no friends, unable to keep a job).

On March 24, 2005 Earl Z. Browne, M.D., treated Richardson for wrist pain incident to a fracture of the arm wrist suffered the previous July and degenerative joint disease. Tr. at 219. Dr. Browne treated Richardson conservatively because Richardson wanted to avoid surgery.

Felix Nwaokator, M.D., examined Richardson at Northeast on March 26, 2004. Tr. at 179. Richardson complained of an inability to sleep, poor appetite, headache, and irritability. Dr. Nwaokator increased Richardson's dosage of Elavil.

Cindi Lynn Hill, M.D., performed an analysis of Richardson's medical records at the request of the Bureau. Tr. at 169. She found that although Richardson alleged multiple medical conditions and limitations, she suffered only from acute infectious bronchitis, rather than chronic bronchitis/emphysema. The only abnormalities Dr. Hill found were a slight hepatomegaly and a slightly elevated elevated test of liver function. She observed, "These are of no functional significance and can be due to her alcohol use, meds/infection, or lab error." Tr. at 169. Dr. Hill found that Richardson did not suffer from chronic liver disease.

On May 6, 2004, Jean W. Branson, Ph.D., a state agency psychologist, reviewed the agency record and completed a Psychiatric Review Technique assessing Richardson. Tr. at 152-67. Dr. Branson found that Richardson suffered from an depressive disorder, a panic disorder, and substance addiction disorder in remission. She opined that Richardson was moderately limited in maintaining concentration, persistence, and pace and mildly limited in her activities of daily living and in maintaining social functioning. Dr. Branson also opined that Richardson was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work

setting. In relevant part, Dr. Branson summarized her impression of Richardson as follows:

> Clmt is a 48 y.o. female c/o depression, short attention span and memory impairment.  Clmt has no current psy t/s, but receives psychotropic R/x . . . Clmt presents in the average range of intelligence.  Clmt provides a reasonably detailed recent and remote history.  Memory presents as grossly intact.  Clmt present as capable of understanding and remembering simple work instructions. . . . Clmt reports being capable of the follow [activities of daily living]: personal care, HH cleaning, chopping w/ sibling, engages in child care for a sibling, watch TV, socialize w/ F&F, accessing public transportation, but had difficulty going to an unfamiliar place . . . [Concentration and effort] results as follows: mod. Limited concentration; slow pace, inconstent [sic] persistence; could not complete serial 7 subtraction; recall 1/3 after 5"; digit span 5 f/w, 3 b/w; limited computational skill.  Clmt presents as capable of sustaining concentration and persisting in simple, routine work duties. . . . Clmt denies difficulty in social interaction. . . . Clm's adaptability appears limited by . . . limited education and substance use.  Clmt presents as capable of carrying out tasks where duties are relatively static and changes can be explained.  She can do tasks that do not require independent prioritization or more than daily planning.

Tr. at 167.  Dr. Branson did not find that Richardson's condition matched any impairment listed at 20 CFR Part 404, Subpart P, Appendix 1.  Dr. Branson's conclusions were affirmed by Roseann F. Umana, Ph.D., on November 13, 2004.

Dr. Nwaokator saw Richardson again on August 18, 2004.  Tr. at 175.  Richardson was coughing and complained that the Elavil was not helping.  Dr. Nwaokator diagnosed bronchitis and depression and switched Richardson to Zoloft.

On October 14, 2004, Richardson told Dr. Nwaokator that she was unable to sleep and was depressed.  Tr. at 174.  She was still coughing.  The doctor advised Richardson to stop smoking, increased her dosage of Zoloft, and also prescribed Trazadone.

Richardson reported to Dr. Nwaokator on March 30, 2005 tearful, depressed over her medical problems and financial status, and complaining of a lack of sleep, lack of energy, and an inability to afford her medications.  Tr. at 208.  She had no answer to the question, "Are you suicidal?"  The doctor gave her samples of Zoloft and Trazadone and

6

referred her to behavioral therapy.

On June 6, 2005, a case manager for Northeast interviewed Richardson. Tr. at 210. Richardson reported that she had no income but that several people helped her with finances. She also reported that she spent most of her day watching television. The case manager referred Richardson to several resources, including water therapy. She also noted that Richardson scored high on the PHC depression scale.

Dr. Nwaokator prescribed Xanax on August 26, 2005 and November 3, 2005. On December 17, 2005, he increased Richardson's dosage of Zoloft. Tr. at 211-13.

Dr. Browne treated Richardson for wrist pain again on August 25, 2005. Tr. at 217. Her condition was about the same as it had been in March 2005.

On October 31, 2005. Manjula Shah, M.D., conducted an Outpatient Psychiatric Diagnostic Interview with Richardson. Tr. at 222-27. Richardson's chief complaint was depression accompanied by low energy, poor appetite, lack of sleep, hearing voices, and seeing shadows. Richardson reported vague suicidal ideation but with no intention to act and no prior history of suicidal ideation or attempts. Richardson also had no history of psychiatric hospitalization. She had been taking 75 mg. daily of Zoloft for one year. She admitted using crack cocaine in the past and was currently drinking beer and smoking cigarettes. Richardson suffered from glaucoma, loss of hearing in one ear, severe arthritis in the right wrist, high blood pressure, high cholesterol, and low weight. She was oriented times three, organized in thought, and cognitively intact. Her general knowledge was fair, and her functional memory was good. Dr. Shah diagnosed Richardson as suffering from major depression secondary to multiple losses with health problems and isolation. On Axis IV of the Diagnostic and Statistical Manual she assessed Richardson as suffering from

moderate to severe psychosocial and environmental problems. Dr. Shah assigned her a GAF of 50. She prescribed Remeron for sleep and advised Richardson to take 50 mg. of Zoloft daily instead of 75 mg.

Richardson saw Dr. Shah again on January 25, 2006. Tr. at 227. Physical problems had caused her to miss several appointments in the interim. She was then taking Remeron, trazadone, amitriptyline, tramadol, and Xanax. Her condition was about the same as it had been in October. Dr. Shah discontinued Remeron.

On April 6, 2006, Dr. Shah found Richardson to be under greater stress than previously and assigned her a GAF of 45. Tr. at 228-29. She also discontinued Richardson's amitriptyline.

*C.     Hearing testimony*

At the hearing, Richardson testified that she stopped working as a housecleaner at Holiday Inn because the work was too arduous and exhausting. She asserted that she still suffered from liver and kidney problems, emphysema, shortness of breath, depression, and headaches. Richardson stated that she was unable to lift more than eight pounds with her right hand because of wrist problems and that her physician was recommending surgery for her wrist. She used a wrist brace. Richardson told the court that she lived by herself, did her own cooking and cleaning, and did not drive. She admitted drinking beer but denied overuse. She took Zoloft, Advair, Lipitor, and other medications, but she had trouble remembering to take them regularly. Richardson testified that she was depressed all the time, stressed, unfocused, and had trouble thinking and remembering. She said that she cries for a half hour at a time every other day and has difficulty completing tasks. Richardson also testified that she earned some money by babysitting and that she watches

8

television, although she has problems focusing for a half hour on a television show. During the hearing, she mentioned that she was being treated by Dr. Shah. Her attorney had not known that she was seeing Dr. Shah.

The ME testified that the only medical records he had seen related to Richardson's mental condition was the psychological evaluation by Dr. House. The ME discounted Dr. House's evaluation because Dr. House was a psychologist rather than a psychiatrist and because Richardson was not receiving continuing care. The ME assumed that medication was effective in controlling Richardson's depression because she was not seeing a psychiatrist regularly. The ME did not know that Richardson had arthritis in her right wrist until that was pointed out to him in the record by defense counsel.

The ALJ gave the VE the following hypothetical: assuming an individual under fifty and then 50 years of age; less than a high school education; right-hand dominant, can do light work except limited to lifting eight to nine pounds with the right hand; limited to simple, repetitive tasks; and no public contact, would such a person be able to perform Richardson's prior work activity as a housecleaner? The VE said that she would and that such work was available. The ALJ then asked if the hypothetical individual had difficulties with memory, concentration, or persistence; was sleeping four hours a day; was unable to complete tasks; cried every other day, would she be able to sustain 40 hours of work activity? The VE testified that she would not.

The ALJ closed the hearing by leaving the record open for Richardson to submit records from Dr. Shah.

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes

9

disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When a claimant alleges disability due to a mental impairment, the Commissioner must use a special technique to evaluate the limitations imposed by the alleged impairment:

10

   (b) *Use of the technique.* (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

   (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

   (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. . . .

   (3) We have identified four broad functional areas in which we will rate the degree of your functional limitations: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . . .

   (d) *Use of the technique to evaluate mental impairments.* After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). . . . If your mental impairment is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation . . . in the decision at the administrative law judge hearing and Appeals Council levels . . . .

   (e) *Documenting application of the technique.* . . . (2) At the administrative law judge hearing . . . level[ ], the written decision issued by the administrative law judge . . . must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reach a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a.

## IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 3, 2003, the alleged onset date . . . .

2. The claimant has the following severe impairment: depression . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to do light level work, performing simple, repetitive tasks in a non public setting.

5. The claimant is capable of performing past relevant work as a housekeeper. This work is classified as light, unskilled work and does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . .

6. The claimant has not been under a "disability," as defined in the Social Security Act, since December 3, 2004 . . . the date the application was filed.

7. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. . . .

Tr. at 12-15.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists

12

of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Richardson claims that the ALJ opinion is not supported by substantial evidence because he did not fully and fairly evaluate her mental impairment. The Commissioner denies that the ALJ failed to evaluate Richardson's mental impairment fully and fairly.

The ALJ's decision adopted the testimony of the ME. Tr. at 13. The ALJ noted that the state agency disability examiners found that Richardson had no severe physical impairments and could perform simple, repetitive tasks in a non-public setting. The ALJ also found that Richardson was limited to carrying 8-9 pounds in her right hand. He asserted that these findings were consistent with Richardson's activities of daily living and Dr. House's evaluation. He also observed that no physician had opined that Richardson's condition meets or equals any listing and that the state agency physicians had opined that her condition did not meet or equal any listing. The ALJ wrote, "The undersigned has given great weight to the opinions of the medical expert, Dr. Steiner[,] and State agency physicians, Doctors Hill, Umana and Branson because their opinions are consistent with the record as a whole and they are familiar with the Commissioner's regulations for evaluating disability." Tr. at 15.

There are a number of problems with the ALJ's decision. The most serious errors are the result of the ALJ's failure to follow the agency's own procedures for evaluating and recording Richardson's functional limitations due to her depression. Agencies are bound to follow their own procedures. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 545

13

(6th Cir. 2004). If a court determines that the Commissioner failed to follow agency procedures in ruling on a claimant's application for benefits, the court must then determine if that failure harmed the claimant. *Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007). If the error was harmless, then the Commissioner should be affirmed. *Id.*

Even though the ALJ's opinion was seriously flawed, it does not appear that the ALJ's errors harmed Richardson. Richardson does not argue that her condition meets the criteria for the impairment listed at 20 CFR Part 404, Subpart P, Appendix 1, § 12.04, Affective Disorders, nor would the record seem to support a finding of disabled pursuant to this listing. Richardson does not display marked limitations in her activities of daily living. No psychologist or psychiatrist has opined that Richardson has marked limitations in social function or concentration persistence or pace. The record includes no evidence of repeated episodes of decompensation of extended duration. The record also provides no evidence that a minimal increase in mental demands or change in environment would cause Richardson to decompensate and does not demonstrate a need for a highly supportive living arrangement. Thus, Richardson cannot show that her condition meets the criteria for affective disorders, nor does Richardson argue that her condition meets any other listing.

The ALJ's opinion was consistent with the opinions of the agency physicians who did not find that Richardson met the criteria for any listing. Richardson has not provided a residual functional capacity assessment from a treating or examining source that contradicts the agency physicians' description of her condition or that contradicts their assessment of her functional capacity. Under these circumstances, the ALJ's opinion must

be said to be supported by substantial evidence.[2]

## VII. Decision

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

<u>/s/ Nancy A. Vecchiarelli</u>
U.S. Magistrate Judge

Date: May 6, 2008

---

[2] The court nevertheless cautions the ALJ to be more careful in ensuring that the agency's procedures are strictly observed. This was a close decision; it is dangerous, indeed, for the Commissioner to continuously and repeatedly argue harmless error.